UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VICTOR M. WALKER,

                Plaintiff,

v.

                                   Case No. 11-12812

PATRICK  R.  DONAHOE,  POSTMASTER      Honorable Julian Abele Cook, Jr.
GENERAL, UNITED STATES POSTAL SERVICE,

                Defendant.


<u>ORDER</u>

       This case relates to a claim by the Plaintiff, Victor M. Walker, who contends that he was victimized by unlawful acts of gender discrimination during his employment tenure with the United States Post Office ("USPS") in contravention of his statutory rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The Court has now been presented with a motion by the Defendant, Patrick R. Donahoe, Postmaster General of the USPS, who seeks to obtain a dismissal of the complaint, citing to Walker's alleged failure to exhaust his administrative remedies in a timely manner.

I.

       Walker began his employment with the USPS in May of 1989. However, he was advised on January 23, 2010 that his position would be abolished within seven days thereafter. In addition, Walker was informed that he would be assigned to a new position with a less desirable work schedule. On April 29, 2010, he learned that a female co-worker with less seniority and whose

1

position had also been abolished  had been assigned to a more desirable position which gave her a greater opportunity for overtime hours. He alleges that this assignment was in violation of the terms of the parties' collective bargaining agreement. Upon learning of this apparent disparity in the work assignment and the potential for higher wages, he immediately expressed his dismay - as well as opposition  - to his employer and to his union representatives. However, no change was made. That same day, Walker contacted a USPS equal employment opportunity ("EEO") counselor, asserting that he had been subjected to discrimination on the basis of his gender (male) and color (light-skinned).[1]

Shortly thereafter, Walker filed a formal administrative complaint of discrimination with the USPS Equal Employment Opportunity office ("the Agency"). On June 25, 2010, the Agency dismissed his complaint, finding that he had failed to contact an EEO counselor within forty-five days of the allegedly discriminatory act, as required by 29 C.F.R. § 1614.105(a)(1). Although a timely appeal by Walker followed, the U.S. Equal Employment Opportunity Commission's Office of Federal Operations affirmed the Agency's administrative decision. His request for reconsideration was denied on March 22, 2011. This litigation followed.

## II.

The Sixth Circuit ordinarily treats a motion to dismiss a complaint for failure to exhaust administrative remedies as a request to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Mitchell v. Chapman*, 343 F.3d 811, 820 and n.10.[2] When considering a motion to dismiss

---

[1]Although the complaint makes reference to Walker's skin color, he has alleged only gender discrimination in the present litigation.

[2]A dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) - as opposed to a dismissal for failure to state a claim under Rule 12(b)(6) - is appropriate in those cases where the

2

under Rule 12(b)(6), a district court accepts the plaintiff's well-pleaded allegations as true and construes each allegation in a light that is most favorable to him. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive an application for dismissal, the complainant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When a court is asked to evaluate a 12(b)(6) motion, those "documents attached to the pleadings become part of the pleading and may be considered." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted)). Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Supplemental

---

plaintiff is able to return to the administrative process and rectify any alleged deficiency. Where, as here, an allegation, if true, that "the plaintiff fail[ed] to consult with the EEO counselor within forty-five days of the discriminatory event . . . , [he] is permanently foreclosed from meeting the condition or statutory requirement," and, thus, the consideration of a dismissal on the merits is appropriate. *Id.* at 820.

3

documents attached to a motion to dismiss do not convert the pleading into an application for the entry of a summary judgment if they do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)).

### III.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 200e-2(a)(1). Title VII provides the exclusive remedy for claims - like this one - that involve federal employment. *Brown v. Gen. Servs. Admin.*, 425 U.S. 802, 829-35 (1976). The associated regulations set forth "rigorous administrative exhaustion requirements and time limitations" which must be satisfied before a plaintiff is entitled to initiate a lawsuit for a claim of discrimination. *Id.* at 833; *see also McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) ("In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of rigorous administrative exhaustion requirements and time limitations." (citation and internal quotation marks omitted)); *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991).

These regulations require an aggrieved federal employee to "initiate contact with [an EEO counselor] within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Failure to do so constitutes a basis for the dismissal of a discrimination claim. *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009) (citation omitted); *Steiner v. Henderson*, 354 F.3d

432, 435 (6th Cir. 2003). The record is clear that Walker did not contact an EEO counselor until April 29, 2010 - a lapse of eighty-nine days after the effective date of the abolishment of his position and his reassignment to an allegedly less desirable work schedule. However, "a federal employee's administrative obligation to consult with an EEO counselor within a particular time period is a precondition to filing suit subject to equitable tolling, waiver and estoppel." *Mitchell*, 343 F.3d at 820 (citations omitted).

Walker argues that he is entitled to an equitable tolling of the limitations period because he could not have discovered that he had been discriminated against by his employer prior to a physical rearrangement of the work place which enabled him to have visual contact with a female co-worker who - in his opinion - had been given a more desirable work assignment.

"The Supreme Court has made clear that tolling in a Title VII context should be allowed only sparingly [and the Sixth Circuit] has similarly noted that equitable tolling is available only in compelling cases which justify a departure from established procedures." *Steiner*, 354 F.3d at 435 (citations and internal quotation marks omitted). The Sixth Circuit has also instructed that, when considering whether equitable tolling is appropriate, the following factors should be considered: "(1) whether the plaintiff had actual notice of the time restraint; (2) whether [he] had constructive notice of the time restraint; (3) the degree of diligence exerted in pursuing [his] rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of plaintiff's ignorance of the time constraint." *Id.* (citations omitted). However, "[t]hese factors are not exclusive bases for equitable tolling . . . , and the decision to allow equitable tolling is made on a case-by-case basis." *Id.* (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 469 (6th Cir. 2003)).

Here, Walker does not contend that he was unaware of the time restraint that had been

5

placed upon him by the Code of Federal Regulations. Thus, the first, second, and fifth factors under *Steiner* weigh against tolling. *See Steiner*, 354 F.3d at 436 (where plaintiff had actual notice of filing deadline, "first, second, and fifth factors cut against [plaintiff's] argument for equitable tolling"). The Defendant acknowledges that he would arguably not be prejudiced if the time limit was tolled. However, he also correctly notes that the absence of prejudice "is not an independent basis for invoking the doctrine [of equitable tolling] and sanctioning deviations from established procedures." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). To the contrary, "prejudice may only be considered if other factors of the test are met and therefore can only weigh in [the defendant's] favor." *Townsend v. Soc. Sec. Admin.*, 486 F.3d 127, 132 (2007) (citation and internal quotation marks omitted). Thus, the inquiry must focus on the sole remaining factor; namely, the degree of diligence, if any, exerted by Walker in pursuing his rights.

The Sixth Circuit has consistently required a party who seeks equitable tolling to demonstrate that, "despite all due diligence[,] he [was] unable to obtain vital information bearing on the existence of his claim." *Seay*, 339 F.3d at 469 (citations and internal quotation marks omitted). In its assessment of the situation, the *Seay* court found that equitable tolling was justified because the plaintiff, who had alleged that his non-selection for a particular position of employment was racially discriminatory, had justifiably relied upon misleading information that was contained in the final Agency decision from his former employer's EEO organization. *Id.* at 469-70. Specifically, he was advised that (1) applications for the "open" position had not been reviewed and (2) no one had been selected for the position that he had sought. *Id.* at 468. However, the Agency decision failed to mention that another individual - a white male - had been "rotated into" the position for "developmental purposes" - information that the court thought to be critical to raise the

plaintiff's suspicions that racial discrimination may have motivated his rejection. *Id.* at 469.

Similarly, in *Dixon v. Gonzales*, 481 F.3d 324, 332 (6th Cir. 2007), the court determined that equitable tolling was appropriate when the defendant "refused and delayed [the plaintiff's] attempts to uncover the basic facts surrounding its rejection of his reinstatement request." There, and in response to the plaintiff's direct inquiries, the defendant refused to disclose relevant information, which forced the plaintiff to file a Freedom of Information Act request to access his own personnel file. Although the defendant delayed the release of the file for almost three years, the plaintiff promptly consulted an EEO counselor upon receipt of the file, which contained a sufficiency of information to "make him aware of the possibility that he had suffered an adverse employment action because of illegal discrimination." *Id.* at 332-33 (citation and internal quotation marks omitted); *see also Leake v. Univ. of Cincinnati*, 605 F.2d 225, 259 (6th Cir. 1979) (equitable tolling of Title VII filing deadline is appropriate when employer (1) requested that employee not seek EEOC counseling until it could investigate her claims itself, and (2) assured her that "it would not use the time it spent in its investigation to prejudice plaintiff with respect to any statute of limitations").

Conversely, the Sixth Circuit has held equitable tolling to be inappropriate in those situations wherein the plaintiff had failed to conduct reasonably direct and diligent inquires of the defendant regarding the relevant underlying facts. For example, a request for equitable tolling was denied when the plaintiff could have learned that he had possibly been subjected to unlawful discrimination by directly asking the defendant college who had been selected for a job for which he had been rejected. *Amini v. Oberlin Coll.*, 259 F.3d 493 (6th Cir. 2001). The court held that his attempts to discover the identity of the successful applicant by regularly checking the college's web

7

site and departmental announcement board were insufficient to establish that he had diligently pursued his rights. *Id.* at 501.

Similarly, the Sixth Circuit also rejected a request for equitable tolling where the aggrieved employee repeatedly pursued a discrimination claim with her superiors but failed to follow their instruction to establish contact with her immediate  supervisor. *Steiner*, 354 F.3d at 436-37 The court also rejected her argument that the other superiors' "refusal to agree to meet with her or to personally address her claim contributed to her missing the deadline, and constituted misleading tactics that should likewise toll the deadline period." *Id.* at 436. Inasmuch as these superiors did not "trick[] [her] or [do] anything untoward in order to prevent her from seeking EEOC counseling," evidence that they (1) encouraged her to initially seek appropriate redress from her supervisor, and (2) failed to advise her of the filing deadline were insufficient to warrant equitable tolling. *Id.* at 436-437.

Guided by these authorities, the Court must conclude that Walker was not reasonably diligent in pursuing his claims. His employer did nothing to mislead him about the facts or his obligation to timely act. Although a "district court need not find that the employer willfully engaged in wrongful conduct to allow equitable tolling . . . , [n]evertheless, the doctrine of equitable tolling is restricted and to be carefully applied." *Seay*, 339 F.3d at 469. Here, Walker has made no showing that "despite all due diligence he [was] unable to obtain vital information bearing on the existence of his claim." *Id.* That he *did not* obtain that vital information does not by itself establish that he *could not* obtain that information. There is no evidence in this record that Walker  made any effort to determine the identities of those individuals who had been  assigned to work on shift assignments that were more preferable than his own. Furthermore, he did not make any inquiries

8

of his supervisors or even walk to the other side of the plant to conduct an investigation on his own. It is clear that, under the controlling Sixth Circuit precedent, his actions fell far short of the diligence required to justify equitable tolling.[3]

Because none of the relevant factors weigh in favor of equitable tolling, and in the absence of any other countervailing considerations, the Court determines that equitable tolling is not warranted in this case. Therefore, the Court grants the Defendant's motion to dismiss the complaint due to Walker's failure to timely exhaust his administrative remedies.

IV.

For the reasons that have been set forth above, the Defendant's motion to dismiss (ECF 7) is granted.

IT IS SO ORDERED.

_____

[3]Perhaps realizing that he cannot meet the standard required in the Sixth Circuit, Walker cites to several cases from the District Court for the District of Columbia for the proposition that the limitations clock does not begin to run until the employee obtains information which gives rise to a "reasonable suspicion" that he has been subjected to unwarranted acts of discrimination. *See, e.g.*, *Hutchinson v. Holder*, 668 F. Supp. 2d 201, 214 (D.D.C. 2009). It seems that Walker has confused the accrual of the limitations period with the tolling of the period once accrued. *See Amini*, 259 F.3d at 499 ("By arguing that the limitations period for his Title VII and ADEA claims should not begin to run until the facts supporting a charge of discrimination become apparent to a reasonable person, [plaintiff] has confused the difference between the accrual of his 300-day period of limitations and the equitable tolling of that limitations period. Rather than an attempt to alter the statutorily-mandated starting date of the limitations period, we believe that [his] efforts to stop the 300-day clock are better categorized as arguments in favor of an equitable tolling of the statute of limitations."). The Sixth Circuit has repeatedly held that the limitations period begins to run when the allegedly discriminatory act is communicated to the plaintiff - not when the facts which support a claim of discrimination become reasonably apparent. *Id.* (holding that any other interpretation would contradict the statutory language, and "reaffirm[ing] our practice of running the Title VII and ADEA limitations provisions from the date on which the alleged discriminatory act . . . was communicated to the plaintiff"). Thus, Walker's claim that he could not have reasonably known that discrimination occurred until April 29th goes to the analysis of equitable tolling rather than the accrual of the limitations period.

Date: July 26, 2012                                    s/Julian Abele Cook, Jr.

                                                       JULIAN ABELE COOK, JR.

                                                       U.S. District Court Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 26, 2012.


                                                       s/ Kay Doaks
                                                       Case Manager

10